UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re<br><br>ALANE TARATUSKA,<br><br>                      Debtor<br><br>ALANE TARATUSKA,<br><br>                      Plaintiff<br><br>v.<br><br>THE EDUCATION RESOURCES<br>INSTITUTE, INC., et al.<br><br>                  Defendants | Chapter 7<br>Case No. 01-10361-RS<br><br><br><br><br>Adversary Proceeding<br>No. 05-1653 |

**MEMORANDUM AND ORDER**

**Introduction**

Alane Taratuska filed a complaint in her underlying Chapter 7 case, seeking a discharge of several student loans on an undue hardship basis, thereby commencing this adversary proceeding. One of these student loans was made by Society National Bank ("Bank") ("Loan") and guaranteed by The Education Resources Institute, Inc. ("TERI") ("Guaranty"). The Loan was obtained through a student loan marketing service operated by a nonprofit organization known as The Access Group. Upon Taratuska's default on the Loan, TERI paid on the Guaranty

and obtained an assignment of the Loan from the Bank.[1]  Thereafter, TERI sued Taratuska and obtained a state court default judgment on the Loan ("Judgment").

Taratuska has now moved for summary judgment that the Loan is not excepted from discharge.  TERI opposes that motion and has filed a cross motion seeking a contrary determination.

# I
## At Issue

Section 523(a)(8) excepts certain student loans from discharge absent undue hardship.  In her summary judgment motion, Taratuska contends that the Loan is not within the class or type of student loan excepted from discharge under that section.[2]

At issue is whether the Loan is one made under a program funded in whole or in part by a nonprofit institution.[3]  If so, then the Loan is excepted from discharge unless Taratuska establishes at trial that repayment of the Loan imposes an undue hardship on her and her dependents.  If not, then the Loan is discharged and no trial is required.

---

[1] At the time the Loan was made, the Bank was one of numerous bank subsidiaries of an Ohio-based bank holding company.  Thereafter, the Bank was merged into one of these subsidiaries.  References to the Bank herein are to the pre- and post-merger entity.

[2] Taratuska's bankruptcy case pre-dates the 2005 amendments to the Bankruptcy Code.  Hence, this matter is determined under the pre-amendment version of Section 523(a)(8).  That version excepts from discharge education-related debts including a debt for an educational loan "... made under any program funded in whole or in part by a governmental unit or nonprofit institution ... unless excepting such debt from discharge ... will impose an undue hardship on the debtor and the debtor's dependents ..."  11 U.S.C. §523(a)(8).

[3] The parties have stipulated that the Loan would be excepted from discharge under Section 523(a)(8) only if it were "made under any program funded in whole or in part by a governmental unit or nonprofit institution" and not under any of the other discharge exceptions in that section.  TERI has further acknowledged that neither the Loan nor the program at issue was funded by a governmental unit.

**II**
**Procedural Status**

On July 12, 2007, I held a hearing on the motions. Based upon the written submissions by the parties (including affidavits, answers to interrogatories, and related exhibits), the arguments at the hearing, and applicable law, the Court finds that the Loan is not excepted from discharge under Section 523(a)(8).

**III**
**Standard**

A party is entitled to summary judgment only upon a showing that there is no genuine issue of material fact and that, on the uncontroverted facts, the movant is entitled to judgment as a matter of law. F.R.Civ.P. 56(c). See *Jaroma v. Massey*, 873 F.2d 17, 20 (1st Cir. 1989).

Where, as here, the moving party would *not* bear the burden of proof at trial, the movant's initial burden is to demonstrate or point out a lack of evidence to support at least one essential element of the opposing party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). The burden then shifts to the opposing party to adduce such evidence on each of the disputed elements as at trial would be sufficient to withstand a motion for directed verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Summary judgment will enter for the movant if the party bearing the burden of proof fails to establish the existence of an element essential to its case. *Celotex v. Catrett*, 477 U.S. at 322-323; *In re Varrasso,* 37 F.3d 760, 763 n. 21 (1st Cir. 1994).

Here, the burden at trial falls on TERI to demonstrate that the Loan is one "... made under any program funded in whole or in part ... by a nonprofit institution ..." 11 U.S.C. §523(a)(8). Hence, for summary judgment, Taratuska must establish that there is a lack of evidence to

support TERI's contention that a nonprofit institution funded (in whole or in part) the program under which the Loan was made; if she does so, then TERI must adduce such evidence on its contention as at trial would be sufficient to withstand a directed verdict.[4] Taratuska has done so; TERI has not.

## IV
## Factual Background

The uncontroverted facts material to the outcome of this matter are as follows.

In July 1996, Taratuska borrowed $15,277.56 from the Bank to fund her graduate education at Boston University.[5] In February 2001, she commenced the Case. In April 2001, the Court issued a discharge order and in May 2001 closed the Case. Taratuska had filed debt schedules reflecting $93,000 in student loans (including the Loan) but did not seek a determination as to their dischargeability during the Case. In November 2002, TERI obtained the Judgment.[6] Unable to satisfy the Judgment or otherwise to repay the student loans, in December 2005, Taratuska moved to reopen the Case. The Court granted that request and Taratuska thereupon commenced this adversary proceeding.

At the time of the Loan, the Bank was a commercial bank and TERI was a nonprofit institution. At that time, the Bank made student loans, some federally guaranteed, others not. The Bank referred to these student loans as Financed Student Loans and classified them in at

---

[4] *See, e.g. In re Smith*, 328 B.R. 605, 611 (1st Cir. BAP 2005).

[5] Funds were also disbursed for so-called guarantee fees to TERI on account of the Loan. For the purposes of this decision, I include these fees in the Loan.

[6] The Judgment was in the amount of $23,651.09. TERI now claims a balance due in the amount of $35,254.12 at June 27, 2007 (plus attorney's fees and costs).

least two groups: Financed Federal Loans ( federally guaranteed) and Financed Private Loans (not federally guaranteed).  Also at that time, The Access Group ("TAG") marketed and coordinated student loans among students, educational institutions, lenders, loan guarantors, and loan servicers.  TAG did so under the labels Law Access Loans, Business Access Loans and Graduate Access Loans, classifying student loans by educational purpose or course of study.[7] TAG appears to have provided the Loan application form and the form promissory note reflecting the Loan ("Application") ("Note").  The Application states that the Loan is " ... a private education loan that must be repaid."  The Note identifies Taratuska as maker, the Bank as payee and TERI as guarantor.  There are several references in the Note to TAG (and its Graduate Access Loan label) but the Note confers no rights and imposes no obligations upon TAG.  TAG grouped its student loans, commercial and nonprofit alike, under a single classification (e.g., all graduate school loans under the Graduate Access Loan label).  The Bank grouped its student loans, as noted, under separate classifications reflecting the loan type (e.g., federally subsidized in one class, not federally subsidized in another).[8]

TERI principally served as a guarantor of student loans disbursed by lending institutions, deriving its revenues from loan guarantee fees. TERI did not advance funds to anyone on account of the Loan when it was made in 1996.  Rather, when Taratuska defaulted on the Loan, in late 2000, TERI paid the balance due and did so in accordance with the Guaranty and in its

---

[7]According to TAG's submissions, Law Access, Inc. was a nonprofit organization doing business as The Access Group and its student loan labels or classifications were TAG service marks not separate legal entities or business units.

[8]The Loan was later included in a student loan portfolio marketed to the investing public by a Bank-related investment vehicle.  The offering materials reflected the Bank's student loan classifications.

customary role as guarantor. TERI was not obligated to purchase the Loan from the Bank when the Loan was made, and it did not do so. Its obligation was to pay the Loan upon Taratuska's default, and it did so. TERI's rights upon such default included the right to obtain an assignment of the Loan and related promissory note, and it did so.

# V
# Discussion

For summary judgment, the matter reduces to this: whether TERI has adduced evidence that a nonprofit institution funded the student loan program under which the Loan was made. This, in turn, requires consideration of the meaning of "program" and "funded" as employed in Section 523(a)(8) and as applied in this matter. Neither term is defined in the Code.

A.    *Parsing the Statute*

Section 523(a)(8) requires four elements for the student loan discharge exception at issue: (a) an educational loan must be made (b) under a program (c) funded (d) by a nonprofit institution. The parties acknowledge the establishment of one such element: the Loan was made. There remains for determination whether TERI has adduced evidence (sufficient to withstand a directed verdict at trial) that the Loan was made under a program funded by a nonprofit institution.[9] Ultimately, given the uncontroverted facts, this matter concerns differing interpretations of the statute and not disputes regarding such facts.

---

[9] Courts have determined that it is the *program* and not the *loan* that must be funded under Section 523(a)(8). *See., e.g., In re Hammarstrom*, 95 B.R. 160, 165 (Bankr. N.D. Cal. 1989). I agree with that reading of the statute. However, there is no commonly accepted understanding of what program funding means other than the advance of funds for a loan made under a particular program's auspices. Apart from TERI's contention (which I reject) that the Guaranty constitutes program funding, the parties appear to agree, and I so conclude, that funding a program means advancing funds for a loan or loans under that program.

*B.*     *Funding*

TERI does not contend that it or any other nonprofit institution advanced funds to Taratuska or to anyone on her account when the Loan was made. TERI *does* contend that the *giving* of the Guaranty to the Bank constitutes *program funding* on account of the Loan. The Court disagrees and holds that the giving of a guaranty does not constitute funding within the meaning of Section 523(a)(8). A guaranty is generally understood to mean a promise to pay the debt of another who is liable in the first instance yet fails to pay the debt when due. Funding is generally understood to mean the advance of money to an individual, entity or venture for a specific purpose. See Black's Law Dictionary (8th ed. 2004). These are very different undertakings. A commitment to perform an act upon the occurrence of a future event (i.e., to pay a debt as a secondary obligor when the primary obligor fails to do so) is not equivalent to a commitment presently to advance the funds that give rise to that debt. Notably, the statute employs both terms, plainly indicating that they have different meanings; otherwise, one or the other would be unnecessary.[10] Hence, the giving of the Guaranty does not constitute the program funding contemplated by Section 523(a)(8) on account of the Loan.[11]

*C.*     *The Program*

TERI also contends that, even if the Guaranty does not constitute the program *funding* specified in the statute, the Loan is nonetheless excepted from discharge because it was made

---

[10]The student loan discharge exception extends to "...an educational loan made, issued or *guaranteed* by a governmental unit, or made under any program *funded* in whole or in part by a governmental unit or nonprofit institution..." 11 U.S.C. sec. 523(a)(8) (emphasis supplied).

[11]Other courts take a different view. *See In re O'Brien*, 419 F.3d, 104, 105 (2d Cir. 2005); *Hammarstrom*, 95 B.R. at 165; and *In re McClain*, 272 B.R. 42 (Bankr. D.N.H. 2002).

under a *program* funded in part by a nonprofit institution. In support of that contention, TERI argues as follows: (a) TAG is a student loan program; (b) student loans obtained through TAG are funded by commercial lenders and nonprofit institutions; (c) Taratuska obtained the Loan through TAG; (d) thus, the Loan was made under a student loan program (namely, TAG) funded in part by a nonprofit institution (indeed, many nonprofit institutions); and (e) therefore, the Loan is excepted from discharge.

Taratuska disputes this contention, arguing as follows: (a) TAG is not a student loan program; (b) even if TAG is a student loan program, it is not the student loan program under which the Loan was made: (c) the Loan was made by the Bank under its Financed Private Loan program which is comprised entirely of commercial (i.e., not federally subsidized) loans; (d) thus, the Loan was made under a student loan program (namely, the Financed Private Loan program of the Bank) funded entirely by a commercial lender (namely, the Bank); and (e) therefore, the Loan is not excepted from discharge.

TERI's argument in favor of TAG as the requisite statutory program fails for two reasons. *First*, TAG has not established that it is a student loan program. TAG has adduced no evidence that it makes student loans, advances funds, guarantees debts or otherwise performs the activities that are reasonably associated with loan program status. Moreover, by its own admission, TAG's program appellations (like Graduate Access Loans) are service marks and marketing labels, tools employed more customarily by a student loan broker than a student loan lender. TAG can claim program status only in the most superficial and generic sense, if at all, by reference to its self-styled marketing categories, service marks and labels. The statute requires more substantive attributes for program status where the extreme consequence of discharge

exception is at stake.

By contrast, the Bank operates and maintains an actual student loan program: originating and making loans, fixing terms, advancing funds, contracting with guarantors, hiring loan servicers, grouping discrete student loan types within common classifications, accounting for and reporting about the performance and status of each such student loan program, even packaging its many loans into an investment portfolio for public consideration and investment.

By any reasonably formulated understanding of the term "program", TAG has adduced evidence not that it operates a student loan program but, rather, that it provides services to those, like the Bank, who do.

*Second*, even if TAG *is* a student loan program, TERI's claim for TAG's status as the funded program for the Loan fails because TAG indiscriminately groups commercial and nonprofit student loans in a single, unitary classification, disregarding the disparate terms and attributes of such different loans. TERI's reading of the statute - that the indiscriminate inclusion of commercial and nonprofit loans in a single classification constitutes a student loan program funded in part by a nonprofit institution - ensures inequitable outcomes: it converts dischargeable commercial student loans into non-dischargeable commercial student loans solely as a consequence of TAG's classification system, a system that ignores loan attributes altogether.[12] Under that reading, *no* TAG-related commercial loan would ever be dischargeable as long as *one* TAG-related nonprofit loan remained unpaid. This seems both illogical and unfair.

A better reading of the program requirement of Section 523(a)(8), and the one I find here

---

[12] I do not consider course of study a loan attribute for Section 523(a)(8) purposes.

applicable, recognizes separate program classifications for nonprofit student loans and commercial student loans, whether made under TAG or the Bank's Financed Private Loan program, and determines funded program status based on such appropriately discrete classifications. By that approach, the economic expectations of all concerned - student borrowers, nonprofit and commercial lenders, loan guarantors - are fully met: nonprofit loan programs retain the congressionally mandated protection of discharge exception while commercial loan programs retain the benefit of their market-driven bargain (reflected in the terms of such loans). This approach serves the goals of Congress - student borrower accountability and student loan program integrity - without extending the discharge exception protection to commercial lenders for loans not otherwise entitled to such protection.[13]

## VI
### Conclusion

TERI has failed to establish an essential element of its case, namely, that the Loan was made under a program funded (in whole or in part) by a nonprofit institution.

---

[13] Here, too, other courts take a different view. *See O'Brien*, 417 F.3d at 106-107; *In re Pilcher*, 149 B.R. 595 (9th Cir. BAP 1993); *In re Bolen*, 287 B.R. 127 (Bankr. D. Vt. 2002). These cases are well-reasoned but do not seem to take into account the outcome I find objectionable - the conversion of a dischargeable commercial student loan into a non-dischargeable commercial student loan for reasons having little to do with the loan itself.

**Order**

For the reasons stated above, the motion of Taratuska for summary judgment is hereby **granted** and the cross-motion of TERI for summary judgment is hereby **denied**. A separate judgment will be issued upon the completion of this adversary proceeding.

Dated: August 16, 2007    _____
Robert Somma
United States Bankruptcy Judge

cc:    Walter Oney, Counsel to Plaintiff
John F. White, Counsel to Defendants